**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

MARY BURNS                         :
                                   :  No.: 2:26-cv-2830
        v.                         :
                                   :  <u>JURY TRIAL DEMAND</u>
POLICE & FIRE FEDERAL CREDIT UNION :
_____

<u>CIVIL ACTION COMPLAINT</u>

COMES NOW, Plaintiff, by counsel, and complains of Defendant as follows:

JURISDICTION

1. This matter has federal jurisdiction pursuant to 42 U.S.C. Section 2000(e) et seq. of the Civil Rights Act of 1964 as amended and the Pregnancy Discrimination Act of 1978 (which was enacted to amend Title VII to prohibit sex discrimination on the basis of pregnancy)(hereinafter the "PDA"), and the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12111 et seq. (hereinafter "ADA").

PARTIES

2. Plaintiff, Mary Burns, is an adult individual who resides at 1300 Fairmount Avenue, Unit 558, Philadelphia, PA 19123.

3. The Defendant, Police & Fire Federal Credit Union (hereinafter "PFFCU"), is a member-owned not-for-profit financial

institution which is not registered with the Department of State of the Commonwealth of Pennsylvania and has an office at 901 Arch Street, Philadelphia, PA 19107-2404, which is located in this Judicial District in Philadelphia County.

FACTS

4.   Plaintiff was first employed by Defendant on about June 22, 2020 as a Sales Representative at Defendant's branch location at 901 Arch Street, Philadelphia, PA 19107-2404 (hereinafter "Arch Street branch").

5.   Defendant employed 50 or more persons within a 75-mile radius of the Arch Street branch.

6.   In early July 2024 Plaintiff became pregnant, and she learned that her due date was about early March 2025.

7.   In September 2024, Plaintiff requested accommodations for pregnancy-related medical conditions by requesting intermittent FMLA leave, and this accommodation was granted retroactively as-of August 14, 2024.

8.   According to Defendant, Plaintiff used about 35 days of intermittent FMLA leave before she commenced continuous FMLA leave on March 4, 2025.

9.   In about late Fall 2024, Plaintiff complained to her Branch Manager, Tricia Meena, that the Saturday Manager, Mabel Castellar, was making her uncomfortable by working her very hard

on Saturdays and asking her to do things beyond her doctor's restrictions.

10. Because, Ms. Meena did not take any action to stop Mabel after Plaintiff complained to her, Plaintiff complained directly to John Durkin in Human Resources in about December 2024/January 2025.

11. Mr. Durkin told Plaintiff that he would address the issue with Ms. Meena and let her know that the branch must comply with the accepted accommodations requested by Plaintiff's OBGYN for her pregnancy.

12. After Mr. Durkin spoke to Ms. Meena, Ms. Meena asked Plaintiff about the complaint and Plaintiff told her what continued to happen on Ms. Castellar's shift on Saturdays.

13. Ms. Meena responded: "moving forward, [Plaintiff] should come directly to her instead of Human Resources."

14. On April 9, 2025, Plaintiff gave birth by vaginal delivery.

15. Plaintiff asked Human Resources Representative, Claudia Sukanick, if she could return to work in early May 2025, and Defendant informed Plaintiff that she could return to work on May 24, 2025, and the remaining time after exhaustion of her FMLA time would be covered by the "ADA."

16. Defendant represented to Plaintiff that she had exhausted her available FMLA leave-time as of April 10, 2025.

17. On May 5, 2025, Ms. Suchanick provided Plaintiff with "ADA paperwork" to fill out.

18. Plaintiff was told that under the Defendant's maternity leave policy she was required to take 6 weeks of leave after a vaginal delivery.

19. Plaintiff returned to work on May 24, 2025 as instructed.

20. Ms. Suchanick agreed that Plaintiff could turn in the ADA paperwork after her follow-up appointment scheduled for June 2, 2025, because the insurance did not permit Plaintiff to go for a follow-up with her OBGYN until 6 weeks post-partum.

21. On May 28, 2025, on Plaintiff's third day back at work, Plaintiff was working with a male customer (hereinafter "customer") to facilitate the transfer of balances from two of his third-party credit cards to his PFFCU Credit card issued by Defendant.

22. Sales Representatives such as Plaintiff were paid a $5.00 incentive bonus for each such balance transfer.

23. Because the customer had only one credit card in his possession on May 28, 2025, Plaintiff had to wait to transfer the balance from the second card on May 29, 2025.

24. On May 31, 2025, Ms. Meena questioned Plaintiff about why she processed two customer credit cards on separate days,

which could result in two separate $5.00 bonuses for one employee.

25.   Plaintiff explained why the balances were transferred on different days and told her to take the second transfer off of her incentives.

26.   Ms. Meena responded that it was not a problem and that in the future Plaintiff should document such occurrences in detail.

27.   Plaintiff agreed to do so.

28.   However, unbeknownst to Plaintiff, Ms. Meena reported the incident to Human Resources as "manipulation  of incentives" and recommended that Plaintiff be terminated.

29.    Nothing more was said to Plaintiff about the incident until June 24, 2025.

30.   On June 24, 2025, Ms. Meena called Plaintiff into a meeting along with the Regional Manager, Lauren Revak, and Plaintiff was informed that she was terminated for alleged "manipulation  of incentives" based solely upon her actions on May 28-29, 2025.

31. Defendant's proffered reason for Plaintiff termination was pretext designed to mask true unlawful reasons for her termination.

32.   The true reason why Plaintiff was terminated by Defendant was because she requested accommodations for her

pregnancy and was granted accommodations pursuant to the Americans with Disabilities Act (hereinafter "ADA") and because she went over her supervisor's head to complain to Human Resources that the branch was not complying with the accommodations that were granted for her pregnancy.

33.  Defendant and its agents perceived that Plaintiff suffered from a disability pursuant to the ADA or perceived that she required and/or requested an accommodation pursuant to the ADA because she was directed to fill out "ADA paperwork" to request an "accommodation" to remain out of work for six (6) weeks maternity leave after a vaginal delivery.

34.  Also, Ms. Meena had a history of retaliating against at least one other Sales Representative for taking protected medical leave.

35.  Thus, Defendant retaliated against Plaintiff for engaging in protected activity pursuant to the FMLA, the ADA and the Pregnancy Discrimination Act of 1978.

36.  Plaintiff's performance was always excellent and she was known to be an honest hard-working employee of Defendant.

37.  Defendant's actions violated the ADA, the FMLA, and the Pregnancy Discrimination Act of 1978.

38.  Defendant and its agents acted at all times material hereto with their authority to hire, fire and/or discipline.

39.    Defendant's agents acted against Plaintiff in a bigoted, willful and malicious manner.

40.    Plaintiff was subjected to humiliation, embarrassment, and mental anguish as a consequence of her termination from employment.

41.    Plaintiff seeks lost back pay, lost benefits, lost future pay, compensatory damages for pain and suffering, punitive damages, attorneys' fees, and costs.

## COUNT 1— PREGNANCY DISCRIMINATION ACT ("PDA")

42.    Plaintiff repeats paragraphs 1-41 as if more fully set forth herein.

43.    By and through its conduct, Defendant violated the PDA by intentionally discriminating against plaintiff and terminating her employment either in whole or in substantial part because she was a pregnant woman who sought accommodations for her pregnancy and tried to enforce the accommodations by engaging in protected activity by complaining to her supervisor and human resources.

WHEREFORE, Plaintiff demands that judgment be entered in her favor on Count 1 against Defendant for lost pay, lost bonuses, lost benefits, other financial losses, compensatory damages for emotional pain and suffering, punitive damages,

attorneys' fees, costs, interest, and any other relief that this Honorable Court deems to be fair and proper.

### COUNT 2– VIOLATION OF THE AMERICAN'S WITH DISABILITIES ACT OF 1990 ("ADA")

44. Plaintiff repeats paragraphs 1-43 as if more fully set forth herein.

45. Defendant regarded Plaintiff as disabled pursuant to the ADA because it perceived that her use of maternity leave pursuant to Defendant's policy had to be approved by applying for an accommodation pursuant to the ADA.

46. By and through its conduct, Defendant violated the ADA by intentionally discriminating against plaintiff and by terminating her in retaliation for applying for and taking approved ADA accommodations.

WHEREFORE, Plaintiff demands that judgment be entered in her favor on Count 2 against Defendant for lost pay, lost bonuses, lost benefits, other financial losses, compensatory damages for emotional pain and suffering, punitive damages,

attorneys' fees, costs, interest, and any other relief that this

Honorable Court deems to be fair and proper.


/s/ Samuel A. Dion

_____

Samuel A. Dion, Esq.
Dion & Goldberger
2001 Market Street, Ste. 2500
Philadelphia, PA 19103
215-546-6033 (tel)
215-280-0138 (cell)
samueldion@aol.com
Attorneys for Plaintiff